# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY BONETSKY, | ) | |
|     Plaintiff, | ) | Civil Action No. 07-281Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Sean J. McLaughlin |
| STATE CORRECTIONAL INSTITUTE | ) | |
| FOREST, et al., | ) | Magistrate Judge Susan Paradise Baxter |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendant Maxa [ECF No. 44[1]] be granted; the motion to dismiss filed by Defendant Skunda [ECF No. 49] be granted; and the motion to dismiss filed by Defendant Rathmore [ECF No. 60] be granted. It is further recommended that the Clerk of Court be directed to close this case.

**II.    REPORT**

    **A.    Relevant Procedural History**

Plaintiff, acting pro se, originally filed this civil rights action in October of 2007 naming the "State Correctional Institute Forest" and "Medical and Psychiatrist Department – SCI –

---

[1] The nineteenth edition to The Bluebook: A Uniform System of Citation (Columbia Law Review Ass'n, et al. eds., 19th ed. 2010) provides citation form for court documents filed with the Electronic Case Management system of the federal courts. Rule B7.1.4. Although The Bluebook advises pinpoint citation to a document's original page number, this Court finds its practice of citing to the page number contained in the PACER header more efficient and will continue its prior practice of citing to that page number herein.

1

Forest" as the only Defendants. In the Original Complaint, Plaintiff alleged that unnamed prison staff over-medicated him which caused him to repeatedly fall and ultimately injure himself. ECF No. 8.

By Report and Recommendation of this Court filed October 14, 2008, this Court recommended that the motion to dismiss filed by Defendants be granted based upon immunity of the state entities under the Eleventh Amendment. ECF No. 19. The Report and Recommendation further recommended that the case be closed.

By Memorandum Order dated December 5, 2008, District Judge Sean J. McLaughlin adopted the Report and Recommendation granting the motion to dismiss. Additionally, District Judge McLaughlin ordered that Plaintiff be permitted sixty days in which to engage in discovery limited solely to the identification of individual Defendants and an additional thirty days in which to file an Amended Complaint. ECF No. 22.

Thereafter, a discovery dispute ensued. During a telephonic hearing held on February 17, 2009, the undersigned ordered that the Attorney General's Office provide Plaintiff with copies of his medical records from February – May of 2007. Further, Plaintiff was again directed to file an Amended Complaint.

By Order dated September 15, 2009, this Court directed Plaintiff to show cause for his failure to file an Amended Complaint. ECF No. 28. In response, Plaintiff requested the appointment of counsel. ECF No. 30.

On October 20, 2009, this Court entered an Order directing the Clerk of Courts to seek counsel on behalf of Plaintiff. ECF No. 31. After three requests for representation were denied by outside counsel, this Court entered an Order dated April 26, 2010, indicating that the Clerk of

2

Courts would no longer seek counsel for Plaintiff. ECF No. 36. The Order further indicated that Plaintiff must file an Amended Complaint before May 10, 2010 so that the case could proceed.

Plaintiff then filed a second motion to appoint counsel (ECF No. 37) which this Court denied and again directed Plaintiff to file his Amended Complaint before May 20, 2010.

On May 21, 2010, Plaintiff filed a Letter addressed to the Clerk of Court regarding his medical treatment. ECF No. 38. On June 4, 2010, this Court directed that the Letter be liberally construed as the long-awaited Amended Complaint, and that the persons identified therein (Dr. Rathmore, Don Skunda, and Robert Maxa) be added as Defendants to this action. ECF No. 39. On June 14, 2010, Plaintiff filed another letter that was construed as a Supplement to the Amended Complaint. ECF No. 42. Thereafter, service (of ECF Nos. 40 and 42) was accomplished on the newly named Defendants by the U.S. Marshal Service.

Defendants are represented separately and have each filed a dispositive motion. ECF No. 44 (motion to dismiss filed by Defendant Maxa); ECF No. 49 (motion to dismiss filed by Defendant Skunda); and ECF No. 60 (motion to dismiss filed by Defendant Rathmore). In response to the filing of the dispositive motions, Plaintiff filed a Letter/Supplement (ECF No. 63); a Letter re Medical Treatment (ECF No. 65); and a Document re Medical Treatment (ECF No. 67). This Court will liberally construe these filings as briefs in opposition to the pending dispositive motions.

### B. Standards of Review

#### 1) Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b) (6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court has considered facts and made inferences where it is appropriate.

### 2) Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

4

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'

\* \* \*

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.' This 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11(3d Cir. 2009) (emphasis added) (internal citations omitted).

### C. The Motions to Dismiss by Defendants Maxa and Rathmore

Defendants Maxa and Rathmore move for dismissal of this case based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the provisions of the Prison Litigation Reform Act.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. A plaintiff need not affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court

decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). Instead, it is the burden of a defendant asserting the defense to plead and prove it. Jones, 549 U.S. at 216.

The exhaustion requirement applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.[2] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.[3]

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] A prisoner need not exhaust every administrative remedy, only those administrative remedies which are available to him. Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). In this context, "available" means "capable of use" (Brown v. Croak, 312 F.3d 109,113 (3d Cir. 2002)) and the availability of the administrative remedy process is a question of law (Ray, 285 F.3d at 291). Interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process. Brown, 312 F.3d at 111; Camp, 219 F.3d at 281. "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (administrative remedies process not available to inmate where prison staff refused to provide him with necessary forms). See also Berry v. Klem, 283 Fed. Appx 1, 5 (3d Cir. 2009) ([Plaintiff] contended that the severity

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83. See also Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion).

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 217-18.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. The policy provides that extensions of time may be allowed where the inmate notifies the Facility Grievance Coordinator of the reason for the delay. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within

---

of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy.").

fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

According to the Original Complaint, Plaintiff did not file any grievance relating to the instant lawsuit. ECF No. 1-1, page 3. Plaintiff acknowledges that a grievance system existed within the prison, but he does not indicate any reason for his failure to avail himself of it. Id. Plaintiff's Amended Complaint and Supplement, as well as his most recent filings in opposition to the pending dispositive motions, do not address the exhaustion argument in any regard. See ECF No. 63, 65.

In Plaintiff's Opposition to the first motion to dismiss filed by Defendants "State Correctional Institute Forest" and "Medical and Psychiatrist Department," Plaintiff argued that his failure to exhaust should be excused due to his six-week hospitalization at SCI-Forest and his subsequent transfer to SCI-Huntingdon. ECF No. 18, page 2. Plaintiff's argument in this regard does not hold weight. Under DC-ADM 804, Plaintiff was required to file an initial grievance (or request an extension of time) within ten days of the incident. The grievance system remained available to Plaintiff despite his six-week stay in the prison infirmary, yet Plaintiff did not utilize it. Accordingly, the motions to dismiss filed by Maxa and Rathmore should be granted based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act.

**D.     The Motion to Dismiss by Defendant Skunda**

Defendant Skunda moves to dismiss this action based upon Plaintiff's failure to state a claim against him.

In the documents liberally construed as the Amended Complaint and the Supplement thereto, Plaintiff makes the following allegations against Defendant Skunda:

> Don Skunda, the head of the medical department should of gotten with the psychiatrist to find out why I was blacking out so many times and why I was on so many medications at one time and why the nutron [sic] shots didn't go down when my weight did. It was there [sic] job to find out just how all the medications they were giving me would counteract with all the nutron shots I had to take once a week but know [sic] body even tried to find out what could of happen to me and what did happen and why it had happened.

ECF No. 40.

> Don Skunda DO. The head of medical department should of gotten together with psychiatrist to find out why he had me on so many medictions [sic] at one time and why I had to take them all right after I had my nutron injection. After I lost all that weight the dosage on the nutron shots was suppose [sic] to go down because it was ordered to be giving [sic] by your body weight and they never lowered the dosage on the nutron shots and I believe that was to [sic] much for my body to take plus all of the other medications they had me on because it was way to [sic] much for my body to take and was causing me to fall all over the place that caused me to break a lot of my ribs and wouldn't take me to an out [sic] hospital so I could of got all the right kind of treatment that I really needed and the right kind of pain medication I needed but alls [sic] they did was put me in one of there [sic] hospital rooms and let me suffer with all the pain I had for months.

ECF No. 40-1, page 2.

> Don Skunda – Health Care Administrator, He should of come over to see how bad my injuries were and again if he did he would of order them to take me to a outside hospital because of all the pain I was in but alls [sic] they did was put me in one of there [sic] hospital rooms and let me suffer with all the bad pain I was having but nobody even cared how much pain I was in or how bad the ribs were broken and that's why they wouldn't take me to a [sic] outside hospital because an outside hospital would of kept records of all the broken ribs and they didn't want that to happen. I don't even know how many times I had asked them to take me to the hospital and they kept refusing to take me. The first thing they should of checked the high dosages and how they would with the nutron injections I was taking was to be given by body weight and once I started to loose [sic] weight the dosage [sic] didn't go down any. I had two holes in my right hip replacement from falling down all over the place.

ECF No. 42, page 3.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs[4]. Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979).

Non-medical prison officials, such as Defendant Health Services Administrator Skunda, are not

> … considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts […], a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within prisons. Inmate health and safety is promoted by dividing responsibility

---

[4] The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

> for various aspects of inmate life among guards, administrators, physicians, and so on.
>
> * * *
>
> [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [...] will not be chargeable with [...] deliberate indifference [under the Eighth Amendment].

Spruill, 372 F.3d at 236. See also Anderson v. Diguglielmo, 2011 WL 167277, at * 2 (3d Cir. Jan.20, 2011).

In his own filings, Plaintiff acknowledges that he was under the care of two physicians during the time period about which he complains. In his capacity as the Health Services Administrator, Defendant Skunda cannot be deliberately indifferent if he failed to respond to Plaintiff's medical complaints while he was under the care of these medical professionals. See Spruill, 37 F.3d at 256.

Accordingly, the motion to dismiss by Defendant Skunda should be granted.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the motion to dismiss filed by Defendant Maxa [ECF No. 44] be granted; the motion to dismiss filed by Defendant Skunda [ECF No. 49] be granted; and the motion to dismiss filed by Defendant Rathmore [ECF No. 60] be granted. It is further recommended that the Clerk of Court be directed to close this case.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Federal Rules of Civil Procedure, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party

opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
United States Magistrate Judge

Dated: February 8, 2011